UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KEVIN GRANT, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION No. 1:15-cv-12972-ADB |
| | * | |
| TARGET CORPORATION. | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

**I.   INTRODUCTION**

On June 16, 2015, Plaintiff Kevin Grant ("Plaintiff") filed this civil action against his former employer, Target Corporation ("Target") in Essex County Superior Court. Plaintiff alleges that Target wrongfully terminated his employment in April 2015, and he seeks damages for breach of contract (Count I), violation of the covenant of good faith and fair dealing (Count II), wrongful termination in violation of public policy (Count III), misrepresentation (Count IV), and defamation (Count V). [See Complaint, ECF No. 8 ("Compl.").] In July 2015, Target removed this action to federal district court, asserting diversity jurisdiction. See 28 U.S.C. § 1332.[1] Presently before the Court is Target's Motion to Dismiss for failure to state a claim upon which relief can be granted [ECF No. 6]; Plaintiff's Opposition; [ECF No. 9.]; and Target's

---

[1] Plaintiff alleges that he is a citizen of New Hampshire. Target is a Minnesota corporation with a principal place of business in Minneapolis, Minnesota. [Compl. ¶¶ 1-2.] Although the Complaint does not contain an *ad damnum* clause setting forth Plaintiff's monetary damages, Target asserts in its Notice of Removal that Plaintiff seeks damages for the "loss of significant income, severe emotional distress," and that the amount-in-controversy exceeds $75,000. Plaintiff has not disputed Target's position. Therefore, the Court appears to have subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

Reply [ECF No. 14]. For the reasons set forth herein, Target's Motion to Dismiss is allowed in part and denied in part.

## II.   FACTS ALLEGED IN THE COMPLAINT

Plaintiff alleges the following facts in his Complaint, which the Court accepts as true for purposes of this Motion to Dismiss.

In April 2015, Plaintiff was employed by Target as a "temporary store team leader," assigned to the Target store in Haverhill, Massachusetts. [Complaint ¶ 4.] On Saturday, April 18, 2015, Plaintiff was out with his wife and friends in Manchester, New Hampshire. [Id. ¶ 6.] Plaintiff was not scheduled to work at Target that night. [Id.] Over the course of the evening, Plaintiff consumed two alcoholic beverages and a meal. [Id. ¶ 7.] He alleges that he was "not impaired." [Id.]

When Plaintiff returned to his vehicle sometime prior to 2:50 a.m., he noticed a missed text message from Jonathan Kingsley, Target's Asset Protection Business Partner for the Haverhill store. [Id. ¶ 8.] The message indicated that an alarm had been triggered at the Haverhill store, and that none of the store's executive team leaders were responding to phone calls. [Id. ¶ 9.] Plaintiff responded to Kingsley's message, indicating that he would attempt to contact the team leaders himself. [Id. ¶ 10.] Plaintiff, however, was unsuccessful in reaching any of them. [Id.] Plaintiff texted Kingsley a second time, informing him that he was out with his wife, but that he would respond to the alarm problem if necessary. [Id.] Kingsley asked whether a response could wait until the responsible team leader arrived at the store at 7 a.m. [Id. ¶ 11.][2] Plaintiff then contacted the alarm company, and one of the company's representatives told Plaintiff that he should report to the Haverhill store as soon as possible. [Id. ¶ 12.] Plaintiff

---

[2] Plaintiff does not state whether or not he responded to Kingsley's question.

texted Kingsley to advise him that he would arrive at the store in approximately one hour. [Id.] Plaintiff also telephoned Target Store Team Leader Trainer Patrick Chaffee at approximately 3:15 a.m. to "confirm that he was following protocol for the alarm." [Id. ¶ 14.] Chaffee did not answer the call. [Id.]

Plaintiff and his wife arrived at Target; entered the store; and waited for the alarm technician to arrive, as the alarm company representative had advised Plaintiff that it would be unsafe to wait in the parking lot. [Id. ¶ 15.] They waited in the store until the alarm technician and Katherine Finneran, one of the Target team leaders, arrived on location. [Id. ¶ 16.] Plaintiff and his wife left the store at approximately 5:30 a.m., once the alarm had been disarmed and Plaintiff was confident that Ms. Finneran could handle the matter going forward. [Id. ¶ 17.]

On Monday, April 20, 2015, Plaintiff spoke to each of his store executives and advised them that in the future, they should be available by telephone so as not to miss any alarm calls. Plaintiff also stated to the executives that he had been out with his wife celebrating on the night of April 18th, and that he was one hour away from the store when he was notified of the alarm. [Id. ¶ 18.]

Approximately one week later, on April 28, 2015, Plaintiff arrived at the Haverhill store and spoke with Target District Manager Andrew Chiarelli. [Id. ¶ 19.] Mr. Chiarelli said that he had been informed that Plaintiff "was drinking and took an alarm call." [Id.] When he asked Plaintiff if this was true, Plaintiff explained that he had been out with friends and had only consumed two drinks. [Id. ¶ 20.] Chiarelli also read the text messages Plaintiff had exchanged with Kingsley. [Id. ¶ 21.] Despite Plaintiff's explanation, Target allegedly terminated his employment for "gross misconduct." [Id. ¶ 21.]

3

Plaintiff alleges, upon information and belief, that "Target's agents and employees made false statements regarding Plaintiff's integrity and the propriety of his conduct." [Id. ¶ 38.][3] Plaintiff further alleges that when terminating his employment, Target failed to follow its own policies and procedures, as stated in Target's employee handbook and elsewhere. [Id. ¶ 22.] Plaintiff claims that at the outset of his employment, he was "familiarized" with Target's employee handbook, as well as its policies and procedures pertaining to termination of employees, and that he "relied upon the same in connection with his own conduct." [Id.] Plaintiff also alleges that his termination violated the terms and conditions of his original written offer letter from Target, which he signed and accepted at the outset of his employment, and upon which terms he relied in accepting Target's offer of employment. [Id. ¶¶ 5, 22.][4]

## III.   CLAIMS FOR RELIEF

Plaintiff is pursuing four claims for relief against Target.[5] Count I of his Complaint alleges that Target breached its employment contract with Plaintiff by failing to follow the policies and procedures outlined in Plaintiff's offer letter and in Target's employee handbook. Plaintiff claims that he suffered damages from this breach in the form of lost income and severe emotional distress. [Compl. ¶¶ 23–26.] Count II of his Complaint alleges that Target also violated the covenant of good faith and fair dealing implicit in Plaintiff's employment contract, and that Plaintiff suffered damages of lost income and severe emotional distress. [Id. ¶¶ 27–29.]

---

[3] Plaintiff does not, however, name the individuals suspected of making those statements, explain the content of the statements, or provide any further factual support for these allegations.

[4] Plaintiff does not specifically allege the contents of the employee handbook, or the offer letter he received from Target, nor are any such documents attached to his Complaint.

[5] Plaintiff has agreed to dismiss Count III of his Complaint, which alleges that Target wrongfully terminated him in violation of public policy. [ECF No. 9, 1 n.1.] Therefore, Count III of Plaintiff's Complaint is hereby DISMISSED.

Count IV alleges that Target is liable for misrepresentation, on the grounds that Plaintiff was not terminated in accordance with the terms and conditions set forth in Target's employee handbook and Plaintiff's written offer of employment, upon which he relied when conducting himself. Again, Plaintiff claims lost income and emotional distress damages. [Id. ¶¶ 33-36.] Finally, in Count V, Plaintiff alleges that Target is liable for defamation, on the grounds that unnamed Target agents and employees made false statements about Plaintiff's conduct and integrity. Plaintiff alleges that as a result of these defamatory statements, his reputation has been damaged; he has lost income; and he has suffered severe emotional distress. [Id. ¶¶ 37-39.]

## IV.  DISCUSSION

### A.  Legal Standard

Under the notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a plaintiff is required to submit "a short and plain statement of the claim" in order to give the defendant "fair notice" of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although notice pleading does not require detailed factual allegations, "more than labels and conclusions" are needed to survive a motion to dismiss. Twombly, 550 U.S. at 555. The facts alleged must "raise a right to relief above the speculative level." Id. A "formulaic recitation of the elements of a cause of action" is not enough. Id.

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the light most favorable to the plaintiff. See United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 384 (1st Cir. 2011). However, courts are not bound to accept as true legal conclusions couched as factual

allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Dismissal for failure to state a claim is appropriate 'if the complaint does not set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Lemelson v. U.S. Bank Nat. Ass'n, 721 F.3d 18, 21 (1st Cir. 2013) (quoting United States ex rel. Hutcheson, 647 F.3d at 384).

### B. Analysis

#### i. Plaintiff Adequately Pleads a Breach-of-Contract Claim.

Count I of the Complaint alleges that Target terminated Plaintiff in violation of Target's own policies and procedures, as set forth in Target's employee handbook and Plaintiff's offer letter, thereby breaching its implied employment contract with Plaintiff. These allegations are sufficient to state a plausible claim for relief on an implied-contract theory. "It is well-settled in Massachusetts that an employee handbook or personnel manual may form the basis of an employment contract that is beyond that of at-will employment." Beebe v. Williams Coll., 430 F. Supp. 2d 18, 23 (D. Mass. 2006); see O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 691 (1996) (discussing circumstances under which a personnel manual may give rise to a binding contract).

Target argues that Count I should be dismissed because Plaintiff does not allege "the circumstances concerning Target's policies, procedures, or handbook necessary to establish the formation of an implied contract." [ECF No. 7, 4]. Specifically, Target notes that Plaintiff failed to allege (i) that Target did not retain the right to unilaterally modify the terms of its handbook; (ii) that there was a negotiation between Target and Plaintiff regarding the terms of the handbook; or (iii) that the handbook set out the specific terms of Plaintiff's employment. The absence of such allegations, however, does not necessarily doom Plaintiff's contract claim. In

O'Brien, the Massachusetts Supreme Judicial Court ("SJC") clarified that there is no magic recipe of "conditions that must exist in order to justify a ruling that the terms of a personnel manual are part of an express or implied employment contract." 422 Mass. at 692; see also Hinchey v. NYNEX Corp., 144 F.3d 134, 141 (1st Cir. 1998) (noting that "[t]here is no explicit test or 'rigid list of prerequisites' to aid in ascertaining if a personnel manual comprises a binding contract under Massachusetts law") (quoting O'Brien, 422 Mass. at 692). Rather, there are a host of factual circumstances that may impact whether a personnel manual can be considered a contract. See O'Brien, 422 Mass. at 692–93.[6]

Because the parties have not yet explored the material facts surrounding this issue, it would be premature to dispose of Plaintiff's contract claim on Target's motion to dismiss. Therefore, Defendant's Motion to Dismiss is DENIED with respect to Count I of Plaintiff's Complaint. See O'Rourke v. Hampshire Council of Governments, No. CV 14-30216-MGM, 2015 WL 4719866, at *7 (D. Mass. Aug. 7, 2015) (denying employer's motion to dismiss breach of contract claim, where plaintiff sufficiently alleged that his employer terminated him for a reason other than those outlined in the employee manual); Beebe, 430 F. Supp. 2d at 23 (denying motion to dismiss employee's breach-of-contract claim, and noting that motion was "premature," where relevant factors pertaining to employee handbook had yet to be explored in discovery); Sivieri v. Dep't of Transitional Assistance, No. CA022233H, 2003 WL 21781403, at *6 (Mass. Super. June 26, 2003) (denying motion to dismiss, where plaintiff adequately alleged that

---

[6] Courts have considered a variety of factors when determining whether the terms of an employee manual are "part of the employment contract." O'Brien, 422 Mass. at 692. For example, courts examine whether there were any negotiations leading to an agreement on employment; whether the manual was received before or after the employee began working; whether the manual allows the employer to amend the manual at will; whether the terms of the manual were negotiated; and whether the employee was required to sign, assent-to, or acknowledge the manual's policies as a condition of employment. See id. at 691–93.

defendant "made representations and promises with respect to [plaintiff's] employment in its Rules of Conduct, and that it failed to live up to these promises, thereby causing her material harm").[7]

Target further argues that Count I is subject to dismissal because Plaintiff failed to identify the precise employment policy or procedure that Target allegedly violated. [Reply, ECF No. 14, 1-2]. This argument is not persuasive. The federal notice pleading standard does not require detailed factual allegations. Rather, the facts alleged must give the defendant fair notice of the basis of the claim and "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Taking the facts alleged to be true, and examining them in the light most favorable to Plaintiff, the Complaint plausibly suggests that (1) Target terminated Plaintiff's employment for "gross misconduct" – namely, responding to an alarm call while intoxicated; (2) Plaintiff was not, in fact, intoxicated; he committed no misconduct, and indeed went to significant trouble to respond to an emergency call from his employer; and (3) in firing Plaintiff for purported gross misconduct, Target breached its own policies and procedures relating to the termination of employees for cause. This is sufficient to make out a plausible claim for relief. Thus, Count I is not subject to dismissal pursuant to Rule 12(b)(6).

---

[7] Firth v. TD Bank, N.A., No. CIV.A. 13-12748-RGS, 2014 WL 172201 (D. Mass. Jan. 14, 2014), cited by Target, is distinguishable. Notably, the district court in Firth chose to convert the defendant's motion to dismiss into a motion for summary judgment, after the defendant submitted certain documents outside the pleadings, including the employee handbook and an employee acknowledgement form. Here, however, Target's employee handbook is not in the record before the Court. Consequently, converting Target's motion to dismiss into a motion for summary judgment is not warranted.

### ii. Plaintiff Fails to State a Viable Claim for Breach of the Covenant of Good-Faith-and-Fair-Dealing.

"Every contract in Massachusetts is subject, to some extent, to an implied covenant of good faith and fair dealing." Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385 (2005). In the employment context, however, courts have placed strict limitations on good faith and fair dealing ("GFFD") claims. See id. Notably, such claims may arise "only in circumstances when an at-will employee has been terminated in bad faith." Id. There is no general duty on the part of the employer to "act nicely." Id. Moreover, the implied covenant "may not be invoked to create rights and duties not otherwise provided for in the existing contractual relationship." Id. (internal quotation and citation omitted). "The scope of the covenant is only as broad as the contract that governs the particular relationship." Id.

In Ayash, the Massachusetts SJC assumed, without deciding, that a hospital employer could violate the implied covenant of good faith and fair dealing by terminating a physician in a manner that violated the hospital's own written employment policies and procedures. See id. at 384–85, 387–88. Ultimately, however, the SJC held that even assuming the hospital breached a duty of good faith and fair dealing, the employee was only entitled to certain types of economic damages flowing from this breach. Specifically, "in awarding damages for breach of the implied covenant of good faith and fair dealing, the goal is to compensate an employee for past services and to deny the employer 'any readily definable, financial windfall' resulting from the breach." Id. at 685 (quoting McCone v. New England Tel. & Tel. Co., 393 Mass. 231, 234 (1984)). Thus, damages for GFFD claims have been limited to compensation "that [the employee] had fairly earned and legitimately expected." King v. Driscoll, 424 Mass. 1, 7 (1996). In Ayash, for example, the SJC held that the plaintiff physician could not recover for her alleged emotional distress, or the alleged negative effects on her career. Id. at 685–86.

Here, even assuming that Target breached a duty of good faith and fair dealing by failing to comply with its own employment policies, Plaintiff has not alleged any facts suggesting that he sustained the type of economic damages that are recoverable under this cause of action. In fact, Plaintiff readily admits that his GFFD claim is not based upon any allegation that Target deprived him of earned compensation.[8] The only specific damages Plaintiff alludes to are (1) loss of future income, (2) reputational injury, and (3) emotional distress [Compl. ¶¶ 26, 29, 39]; all of which the SJC has held are not recoverable. See Ayash, 443 Mass. at 686 (holding that the employer "is liable neither for negative effects on the plaintiff's future career nor for the plaintiff's emotional distress"); King, 424 Mass. at 7 (affirming judgment for defendant on GFFD claim, where plaintiff failed to present evidence that he was "denied compensation for work performed").

Where Plaintiff has conceded that he sustained no direct economic damages flowing from the alleged breach, it would be futile to allow Plaintiff to amend his Complaint with regard to Count II. Consequently, Count II of Plaintiff's Complaint is DISMISSED for failure to state a claim upon which relief may be granted. See Harrison v. Kraft Foods, Inc., No. CIV.A. 07-10233-RWZ, 2007 WL 3232552, at *7 (D. Mass. Oct. 30, 2007) (dismissing employee's GFFD claim pursuant to Fed. R. Civ. P. 12(b)(6), where he did not allege that employer failed to compensate him for past services, and where his claim "exclusively concerns his desire for wages he would have made in the future had his employment not been terminated"); Byrnes v. Lukes, No. 20091403, 2009 WL 4894460, at *7 (Mass. Super. Nov. 3, 2009) (dismissing

---

[8] Plaintiff asserts in his Opposition that his claim for breach of the covenant of good faith and fair dealing "is predicated upon Defendant's failure to comply with its own policies and procedures . . . not upon Target's attempt to deprive him of earned compensation." [ECF No. 9, 9.]

employee's GFFD claim against her employer, where she failed to allege that her unlawful termination deprived her of compensation for services she had already performed).

### iii. Plaintiff Fails to State a Viable Claim for Misrepresentation.

"Under Massachusetts law, claims of fraudulent and negligent misrepresentation require a false representation of material fact, knowledge of falsity or carelessness on the part of the defendant, and a reasonable reliance by the plaintiff." Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 30 (1st Cir. 1998) (citations omitted). Here, Plaintiff alleges that the statements of fact he relied upon were the "terms and conditions upon which a Target employee could be terminated." [Compl. ¶ 34.] Those terms and conditions were allegedly set forth in Target's policies and procedures and its employee handbook, with which Plaintiff familiarized himself "upon commencement of his employment." [Id. ¶¶ 22, 34.] Plaintiff contends that those policies and procedures were not followed in connection with his termination. [Id. ¶ 22.]

Even when viewed in the light most favorable to Plaintiff, these allegations do not give rise to an actionable claim for fraudulent or negligent misrepresentation under Massachusetts law. "The general rule in Massachusetts is 'that statements promissory in nature and statements of conditions to exist in the future are not actionable.'" Nationwide Book Indus., LLC v. A & S Booksellers, Inc., 950 F. Supp. 2d 264, 269 (D. Mass. 2013) (quoting Bolen v. Paragon Plastics, Inc., 754 F. Supp. 221, 226 (D. Mass. 1990)). The only notable exception to this rule is where the defendant "did not intend to carry out the promise" at the time the statement was made. Bolen, 754 F. Supp. at 226.

Here, Target's policies and procedures, which allegedly establish the conditions under which a Target employee may be terminated, qualify as a statement of condition to exist in the future. Plaintiff has plead no facts plausibly suggesting that these statements were false when

11

made, or that Target knew of or recklessly disregarded their falsity. See Blacksmith Investments, LLC v. Cives Steel Co., 228 F.R.D. 66, 73 (D. Mass. 2005) (allowing motion to dismiss misrepresentation and deceit claims, where the complaint failed to allege that the statements regarding future conduct were false when made). The Complaint merely alleges that Target failed to comply with its stated policies when terminating the Plaintiff. This does not set forth a viable claim for misrepresentation. Accord Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 595 (M.D.N.C. 2003) ("Simply because [the employer] disregarded and failed to follow the outlined policies is not evidence that [the employer] knew it never intended to follow the policies. Rather, it is only evidence that they did, in fact, ultimately disregard the promise."); see also Presley v. Pepperidge Farm, Inc., 356 F. Supp. 2d 109 (D. Conn. 2005) (holding that employer did not commit negligent misrepresentation with regard to its anti-harassment policy, absent evidence that representations in its company handbook or anti-harassment policy were untrue when made or that employer should have known they were untrue at that time).

Apart from the alleged misstatements in the employee handbook and offer letter, Plaintiff's Complaint does not allege any other material misrepresentations that would support his claim in Count IV. Consequently, the Court finds that it would be futile to permit Plaintiff to amend this claim, and Count IV of Plaintiff's Complaint is therefore DISMISSED for failure to state a claim upon which relief may be granted.

### iv. Plaintiff Does Not Allege Sufficient Facts to Plead a Plausible Defamation Claim, But He Will be Granted Leave to Amend.

Plaintiff's final claim for defamation alleges that "[u]pon information and belief, Target's agents and employees made false statements regarding Plaintiff's integrity and the propriety of his conduct." [Compl. ¶ 38], although the Complaint alleges virtually no facts to support these contentions. As a whole, though, the Complaint does suggest that Target terminated Plaintiff, at

least in part, because he was reportedly drinking on the night he took the alarm call. Plaintiff contends that he had consumed only two alcoholic drinks on the night of the incident and "was not impaired." [Compl. ¶ 7.] Assuming Plaintiff is correct, and drawing all reasonable inferences in favor of Plaintiff, it is reasonable to infer that some misinformation about Plaintiff's behavior or alcohol consumption may have been communicated to Target management, and that this information may have contributed to Target's decision to terminate Plaintiff's employment. Although the inference of misinformation is plausible, the facts alleged do not plausibly suggest that any such information was communicated in a defamatory matter.

"Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." North Shore Pharmacy Servs., Inc. v. Breslin Associates Consulting LLC, 491 F. Supp. 2d 111, 124 (D. Mass. 2007) (quoting Correllas v. Viveiros, 410 Mass. 314, 319 (1991)). "To prove defamation, the plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." Dragonas v. School Comm. of Melrose, 64 Mass. App. Ct. 429, 437 (2005) (internal quotation and citation omitted). "The level of fault required varies between negligence (for statements concerning private persons) and actual malice (for statements concerning public officials and public figures)." Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003).

Claims for defamation are subject to the notice pleading requirements set forth in Fed. R. Civ. P. 8. Therefore, plaintiffs "are not required to set forth the alleged defamatory statements verbatim." North Shore Pharmacy Servs., Inc., 491 F. Supp. 2d at 124; see also Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir. 2003) (holding that state pleading requirements, "so far as they

are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law").[9] Here, however, Plaintiff has failed to satisfy even the routine pleading standard set forth in Rule 8(a), which requires a "short and plain statement of the claim . . . in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Merely alleging that unnamed Target agents or employees made defamatory statements about the propriety of Plaintiff's conduct does not explain the essential "who, what, when, and where," and it does not give Target fair notice of the factual basis for Plaintiff's defamation claim. Nor do these vague allegations "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Wood v. Moss, 134 S. Ct. 2056, 2067 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Plaintiff alleges no facts from which one could reasonably infer that Target agents or employees published a false statement regarding the Plaintiff, or that they did so either negligently or intentionally.

In his Opposition to Target's Motion to Dismiss, Plaintiff contends that the "disparaging conduct" that forms the basis of his defamation claim "occurred prior to his termination and, in great measure, caused it." [ECF No. 9, 14.] He further explains that he "believes and has been told that a co-worker who had been hoping to be named to the position [Plaintiff] was hired to fill" made "disparaging statements about [Plaintiff] to a third party after the incident . . . in an attempt to get [Plaintiff] fired." [Id.] These allegations, however, appear nowhere in the

---

[9] Target suggests that under Massachusetts law, defamation claims are subject to a stricter pleading standard, and that Plaintiff is required to identify the content of the defamatory statement, the individuals who published the statement, and any third parties who received defamatory statements. [See ECF No. 7, 10–11.] In Andresen, however, the First Circuit held that Massachusetts' heightened pleading standard for defamation claims does not affect the pleading standard when such claims are alleged in federal cases. See 349 F.3d at 17. Nonetheless, this Court agrees that Plaintiff's defamation claim currently fails to meet even the baseline pleading standard set forth in Fed. R. Civ. P. 8(a).

Complaint, nor are they reasonably inferable from the facts actually alleged. Such facts, if properly elaborated upon, may be sufficient to nudge Plaintiff's defamation claim "across the line from conceivable to plausible," and provide Target with sufficient notice of the factual grounds for the claim. See Twombly, 550 U.S. at 547. Consequently, Target's Motion to Dismiss Plaintiff's defamation claim is hereby ALLOWED; however, Plaintiff will be granted leave to file an Amended Complaint within 21 days of this Order, which must set forth facts sufficient to state a plausible claim for defamation, if Plaintiff wishes to pursue this claim.[10]

---

[10] Target also argues that Plaintiff's defamation claim is subject to dismissal because any defamatory statement made by its agents or employees would be conditionally privileged. See generally McCone v. New Eng. Tel. & Tel. Co., 393 Mass. 231, 235–36 (1984). Privilege, however, is an affirmative defense to liability, and Plaintiff is not required to plead the *absence* of privilege in order to state an actionable claim. See Harrington v. Costello, 467 Mass. 720, 729 n.15 (2014). Further, the defense of privilege hinges on whether the defendant's publication was "reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." McCone, 393 Mass. at 235. Because this issue is necessarily fact-dependent, the Court finds that it would be premature to dismiss Plaintiff's defamation claim on privilege grounds at this stage.

In its Reply brief, Target argues that there is a third reason Plaintiff's defamation claim must be dismissed; namely, even assuming Plaintiff's co-workers made defamatory statements about him, there are no factual allegations suggesting those statements were made to a third party other than Target employees or managers. In other words, the claim fails because Target "cannot publish a defamatory statement to itself." [ECF No. 14, 6]. Target cites an Eighth Circuit case, Halsell v. Kimberly-Clark Corporation, 683 F.2d 285 (8th Cir. 1982), for the proposition that "communications between officers of a corporation or between different branches of the same corporation, in the course of corporate business, do not constitute publications to third persons." Id. at 289. In Halsell, however, the court was applying Wisconsin state law, which diverges from Massachusetts law on this very point. In fact, "Massachusetts has expressly rejected the proposition that there can be no publication of an intra-corporate communication, i.e., a writing between and among officers and agents of the same corporation in reference to the corporation's business." Arsenault v. Allegheny Airlines, Inc., 485 F. Supp. 1373, 1379 (D. Mass.) (citing Bander v. Metropolitan Life Ins. Co., 313 Mass. 337, 348 (1943)), aff'd sub nom. Roger Arsenault v. Allegheny Airlines, Inc., 636 F.2d 1199 (1st Cir. 1980). Accordingly, the Court rejects Target's argument with respect to third-party publication.

V.   **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint [ECF No. 6] is hereby denied in part and allowed in part. Defendant's Motion is <u>DENIED</u> as to Count I. Defendant's Motion is <u>ALLOWED</u> as to Counts II, III, and IV, and those claims are hereby <u>DISMISSED</u> with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Count V of Plaintiff's Complaint (defamation) is <u>DISMISSED</u> pursuant to Fed. R. Civ. P. 12(b)(6), without prejudice. Plaintiff may file an Amended Complaint within twenty-one (21) days of the date of this Order setting forth facts sufficient to support his claim for defamation.

**SO ORDERED.**

Dated: September 3, 2015                                         <u>/s/ Allison D. Burroughs</u>
                                                                 ALLISON D. BURROUGHS
                                                                 DISTRICT JUDGE